[Cite as *State v. McKinney*, 2019-Ohio-1118.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106377

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**KEVIN MCKINNEY**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-606219-A and CR-17-618074-A

**BEFORE:** Keough, J., S. Gallagher, P.J., and Handwork, J.*

**RELEASED AND JOURNALIZED:** March 28, 2019

**ATTORNEYS FOR APPELLANT**

Russell S. Bensing
1370 Ontario Street
1350 Standard Building
Cleveland, Ohio 44135

Erin R. Flanagan
75 Public Square, Suite 920
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Christopher D. Schroeder
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Kevin McKinney ("McKinney"), appeals his conviction for obstructing justice and the subsequent imposition of consecutive sentences. For the reasons that follow, we affirm in part, reverse in part, and remanded for resentencing.

{¶2} In May 2016, McKinney's younger brother, Douglas Shine ("Shine"), was charged in connection with a series of shootings and murders that spanned from January 24, 2015 until June 4, 2015. Specifically, and for purposes of this appeal, Shine was charged with the February 5, 2015 murders of three individuals, including Brandon White, at the Chalk Linez Barbershop ("the barbershop murders"). Four months later on June 4, Aaron Ladson ("Ladson"), White's

brother and a person who identified Shine as the barbershop shooter, was murdered in his driveway.[1]

{¶3} In February 2016, McKinney was charged with conspiracy to murder Ladson and other related crimes. However, on the same day that Shine was indicted, the indictment against McKinney was dismissed in favor of a superseding 51-count indictment that charged him not only with Ladson's murder but also the barbershop murders. McKinney pleaded not guilty and the matter was scheduled for a jury trial.

{¶4} Prior to trial, the state dismissed Counts 1-34, which related to the barbershop murders. The remaining counts, which pertained solely to the murder of Ladson, included aggravated murder, conspiracy to commit aggravated murder, murder, two counts of felonious assault, aggravated burglary, three counts each of aggravated robbery and theft, obstructing justice, and having weapons while under disability. Most counts also contained one- and three-year firearm specifications. For purposes of trial only, the counts were renumbered and tried to a jury, except for the weapons while under disability offense, which was tried to the bench.

{¶5} This court set forth most of the relevant facts surrounding Ladson's murder in this court's decision in *Shine*.

> [Following Shine's arrest for the barbershop murders], Ladson went to stay with his grandmother on Harvard Avenue. In recorded phone calls from the Cuyahoga County Jail, [Shine] asked [McKinney] if "Pudge," a.k.a. Ladson, made a statement about him. McKinney asked, "His statement got you charged, right?" [Shine] responded affirmatively, and instructed McKinney to have a family member print out the discovery in his case. A short time later, McKinney's girlfriend purchased a Pure Talk flip phone, and left it at McKinney's house.

---

[1] Shine was subsequently convicted for multiple offenses, including offenses involving the barbershop murders and the murder of Ladson. *See State v. Shine*, 8th Dist. Cuyahoga No. 105352, 2018-Ohio-1972.

While at the Justice Center in connection with pending drug cases, Ladson and [his wife] Shirley [Ladson] ran into McKinney. According to Shirley, McKinney called Ladson "a snitch[-]ass bitch." * * *

On June 3, 2015, [Shine] called McKinney from jail and McKinney said that he hoped he would have some "good news" for [Shine] when he visited him later. That evening, there was a home invasion approximately five houses away from where Ladson was staying, and the assailants were looking for "Pug" [or "Pud"].

On the morning of June 4, 2015, Ladson was gunned down in the driveway of his grandmother's home. Police chased a suspect but did not catch him.

The gang impact unit of the Cleveland Police, working together with the Sheriff's Office, set up surveillance equipment to record [Shine's] statements during the planned visit [on June 5th] with McKinney. During this conversation, [Shine] told McKinney [that no one knew anything about the "502"] phone number that communicated with [Lawrence] Kennedy [a friend of Shine's].

Kennedy was subsequently shot and killed on June 7, 2015. His cell phone was taken into evidence, and police obtained text messages from the phone. [On May 13, 2015, [a]pproximately two weeks before Ladson's murder, Kennedy texted [to McKinney's 502 Pure Talk] "[text me] da address[.]" The response provided Ladson's grandmother's address. On the day of [Ladson's] murder, Kennedy also texted "Checkmate" to [McKinney's] Pure Talk phone. After an inquiry as to whether it was "done," Kennedy responded affirmatively and received word back to get rid of his phone and that he would receive a new one. [Kennedy responded "make sho its not trash."] Kennedy also texted that he was being chased by police. Police determined that Kennedy's phone was in the vicinity of both the Harvard Avenue home invasion and the murder of Ladson.

*Shine*, 8th Dist. Cuyahoga No. 105352, 2018-Ohio-1972, ¶ 18-23.

{¶6} McKinney testified in his defense, denying that he sent Kennedy to murder Ladson, but admitting to the text communications between him and Kennedy. He told the jurors that at the time of Ladson's death, he did not believe that Shine committed the barbershop murders; however, his opinion has since changed. McKinney stated that he had known Ladson for about 11 years and considered him a friend, who he used to hang out with on occasion. He stated that Ladson contacted him about giving another statement, which would recant his previous statement given to police that Shine committed the barbershop murders. He further admitted that he was

going to pay Ladson some money after the statement was given — "giving him money for — so he could tell the truth, that he didn't see anything." (Tr. 2711.) He denied that the exchange of money for the recanted statement was a bribe; rather, he stated the money was for Ladson's family when Ladson went to prison on a drug offense.

{¶7} McKinney testified that he sent Kennedy to Ladson's house to retrieve Ladson's new "truthful" statement. He stated that he sent Kennedy because he was fearful of his own safety considering that his brother, Shine, was accused of shooting and killing Ladson's brother, and White's cousin was making threats. According to McKinney, the plan was for Kennedy to go to Ladson's grandmother's house, obtain the statement, bring it back to him, and then McKinney would give Kennedy the money to take back to Ladson. McKinney testified that when he received Kennedy's text message "Checkmate," he assumed Kennedy had obtained Ladson's statement, and when Kennedy responded "make sho its not trash," he believed at the time that he was talking about the statement.

{¶8} McKinney testified that he learned of Ladson's death on social media and was immediately shocked and concerned because he "never intended for Ladson to get hurt." He contacted Kennedy, questioning what happened because Ladson getting killed was not "what I ordered. It's not what I wanted. It wasn't my orders. This is not what was supposed to happen." (Tr. 2724.) Based on the conversation, McKinney discovered that Kennedy did not go alone to obtain the statement; one of Shine's friends went along. He testified that he did not believe that Kennedy killed Ladson, but Kennedy had "something to do with the murder." (Tr. 2740; 2816.)

{¶9} McKinney stated he subsequently disposed of his 502 Pure Talk cell phone because he was concerned that based on the text messages between him and Kennedy, he could be implicated in Ladson's murder.

{¶10} After three and one-half weeks of trial, the jury found McKinney not guilty of all counts, except renumbered Count 16, obstructing justice. The court subsequently found McKinney guilty of having weapons while under disability. The matter was continued for sentencing following the preparation of a presentence investigation report. While McKinney was awaiting sentencing, he filed a motion to set aside the jury verdict and enter a judgment of acquittal on the obstructing conviction, contending that the offense was "overly vague"; leading to the jury not rendering a unanimous verdict. The state opposed the motion, and the trial court denied McKinney's request.

{¶11} On July 9, 2017, and following the jury verdict, the state indicted McKinney in Cuyahoga C.P. No. CR-17-618074, on two counts of tampering with records, in violation of R.C. 2913.42(A), felonies of the third degree. The counts stemmed from McKinney applying for and obtaining a state of Ohio identification card using the identifying information of his cousin, Kelvin Bedell. According to the indictment, the date of the offenses occurred on or about January 8, 2010. On September 13, 2017, and as part of a plea agreement, McKinney pleaded guilty to one count of tampering with records; the remaining count was dismissed. The case was continued for sentencing.

{¶12} On September 21, 2017, McKinney appeared for sentencing on three cases.[2] In Cuyahoga C.P. No. CR-17-618074, the trial court initially imposed a 24-month sentence on the

[2]In Cuyahoga C.P. No. CR-16-607003, McKinney was charged with grand theft and tampering with records. On June 14, 2017, he pleaded guilty to an amended charge of falsification, in violation of R.C. 2921.13(A)(4), a first-degree misdemeanor. At the September 21, 2017 sentencing, the court sentenced McKinney

tampering with records offense. In Cuyahoga C.P. No. CR-16-606219, the trial court imposed the maximum sentence of 36-months on both the obstructing justice and having weapons while under disability offenses. The trial court ordered that all three prison sentences be served consecutively, for a total of eight years. After the sentence was announced and as he was being led out of the courtroom, McKinney expressed his dissatisfaction with receiving eight years in prison by using profane and vulgar language directed at the trial judge. The judge then indicated that he "misspoke" and the 24-month sentence on the tampering with records offense was "actually a 36-month sentence." (Tr. 3162-3163.) Over objection, the trial court issued sentencing journal entries imposing a total prison sentence of nine years.

{¶13} McKinney now appeals, raising two assignments of error.

## I. Obstructing Justice — Alternative Means v. Multiple Acts

{¶14} The state's theory for the obstruction charge was that McKinney arranged to have Ladson killed to purposefully hinder the prosecution of Shine. (*See* tr. 2666 and 3008.) The state presented direct and circumstantial evidence to prove that McKinney provided Kennedy with Ladson's address after a jail visit with Shine where it was discussed that Ladson gave the police a statement identifying Shine as the barbershop shooter.

{¶15} During his testimony, McKinney admitted that he sent Kennedy to Ladson's grandmother's home, but not with the intention to have Ladson killed. Rather, McKinney stated that after being approached by Ladson about the truth, he sent Kennedy to Ladson's home to obtain a new statement recanting the prior statement. McKinney admitted that he intended on

to time served, waiving all fines and costs. (Tr. 3160.) However, the court's journal entry imposed costs of the prosecution. McKinney does not make any challenge to that case on appeal.

giving Ladson money after the statement was obtained. He further admitted that he discarded his cell phone out of fear of being implicated in Ladson's murder.

{¶16} In closing arguments, defense counsel reminded the jury that "two theories" were presented to them — the state's theory of McKinney's "murderous intention"; and "an alternative theory," presumably the defense's theory that McKinney sent Kennedy to obtain a new statement. (Tr. 3058.) In rebuttal, the state challenged the defense's theory stating that even if McKinney's only involvement was to pay Ladson for a new statement, "it's called bribery, its called obstruction of justice." (Tr. 3075.)

{¶17} During deliberations, the jury submitted a question seeking clarification on Count 16, obstructing justice. The question pertained to the wording, "Furthermore, and the crime committed by the person aided [* * * ]" Which crime does this refer to? The murder of Aaron Ladson or Barbershop or any crime?" (Tr. 3110.) The jurors underlined the words "and the crime."

{¶18} The court noted on the record that extensive discussion occurred off the record and in chambers "regarding the issue of the barbershop." (Tr. 3112.) The court acknowledged that the jurors were "specifically told * * * that this case did not concern any of the crimes or events relating to the barbershop * * *." (Tr. 3112.) The court noted that various arguments could be made as to the intent or interpretation of Count 16 — disposal of the cell phone, the person aided could be Kennedy or Shine. (Tr. 3112-3113.) The state reminded the court that the jury was instructed based on the language contained in the indictment, which "only requires the jury to find that the crime was committed by another person" and "that the other crime was an aggravated murder, murder or an F1 or an F2." The state believed that providing competing theories of the case would be akin to a supplemental closing argument. The state requested that

the jury be instructed that they have all instructions on the law and to "consult with their collective memories." (Tr. 3113-3114.)

{¶19} Defense counsel responded that the "other person" or "another person" language is singular, limiting it to only one person. And not identifying who the other person is could lead to the jury not reaching a unanimous verdict, because some could find that McKinney aided Shine, and some could find that McKinney aided Kennedy. Counsel requested either a clarification or that the count "be dismissed for vagueness." The state responded that the jury did not have to agree on a specific theory of the crime; they could think it's Shine or Kennedy; the jury only needed to be unanimous on the elements of the offense.

{¶20} The court advised the parties that its intention was to give the following response to the jury: "Count 16 concerns the actions and/or conduct surrounding the activities that occurred on or about June 3rd and June 4th, 2015." (Tr. 3117.) The state noted its objection; no objection was raised by the defense.

{¶21} While this question was being discussed, the trial court also noted that the verdict form for Count 16 was not accurate because it suggested that McKinney was the person who was aided and abetted — "in other words, he is the other person." (Tr. 3117-3118.)

{¶22} Following this question and discussion of the verdict form, defense counsel requested that a limiting instruction be given that the person aided was Lawrence Kennedy — "and not leave any kind of misconception that maybe the obstruction of justice was for Douglas Shine because the language of the date, you know, people could tie it back to the barbershop even though it was committed on that day. So we would like a not barbershop kind of instruction or something of that sort." (Tr. 3118-3119.)

**{¶23}** The court explained that in the "Further Finding" instruction for Count 16, it removed McKinney's name from the amended verdict form to read that the crime was committed by "the other person" or "another person." No objection was raised regarding the lack of limiting instruction as requested or the amended jury verdict form. The jury was instructed that McKinney could not aid himself.

**{¶24}** The jury ultimately reached a verdict, and even though the state presented evidence to support its theory that McKinney was involved in Ladson's murder, the jury acquitted McKinney of all charges relating Ladson's death but found him guilty of obstructing justice.

**{¶25}** Following the verdict, McKinney requested that the court set aside the verdict and enter a judgment of acquittal on the obstructing conviction, contending that offense was "overly vague"; leading to the jury not rendering a unanimous verdict. The state opposed the motion and the trial court denied McKinney's request.

**{¶26}** In his first assignment of error, McKinney contends that his conviction for obstructing justice is based upon the jury's failure to reach a unanimous conclusion as to the acts upon which his conviction is based, which is in derogation of his right to due process under the law, as protected by the Fourteenth Amendment to the United States Constitution.

**{¶27}** McKinney was charged with obstructing justice, in violation of R.C. 2921.32(A)(6). The indictment read:

> On or about June 4, 2015 [McKinney] did, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for a crime or to assist another to benefit from the commission of a crime, prevent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person or child.
>
> FURTHERMORE, and the crime committed by the person aided was aggravated murder, murder, or a felony of the first or second degree or the act committed by the child aided would have been one of those offenses if committed by an adult

and the offender knew or had reasons to believe that the crime committed by the person aided was one of those offenses or that the act committed by the child aided would have been one of those offenses if committed by an adult.

**{¶28}** The trial court's instruction to the jury on the obstructing count mirrored the language in R.C. 2921.32(A)(6), stating:

"Before you can find the defendant guilty of obstructing justice, you must find beyond a reasonable doubt that on or about the 4th day of June, 2015, in Cuyahoga County, Ohio, the defendant did, with purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of another for a crime, or to assist another to benefit from the commission of a crime, prevent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person or child.

Furthermore, and the crime committed by the person aided was aggravated murder, murder, or a felony of the first or second degree."

\* \* \*

If you find the defendant guilty of obstructing justice as charged in [C]ount 16 of the indictment, you must further decide that the crime committed or alleged to have been committed by the person aided was or was not aggravated murder, murder, or a felony of the first or second degree.

You will also decide whether the defendant did nor did not know or have reason to believe that the offense committed by the other person was obstructing justice, which is a felony of the third degree \* \* \* .

(Tr. 2995-2997.)

**{¶29}** The jury was also given the general instruction that it had to reach a unanimous verdict. "Because this is a criminal case, the law requires that all 12 of you be in agreement before you can consider that you have reached a verdict." (Tr. 3101, 3105.)

**{¶30}** McKinney contends that he was deprived of due process of law and a unanimous verdict because there were numerous acts upon which the charge of obstructing justice could have been found, and the state argued several throughout the course of trial. We find, however, that the record reveals that the state only argued one theory to the jury throughout the trial — that

McKinney sent Kennedy to murder Ladson. Only after McKinney presented his defense did the state maintain that McKinney's payment for a new statement would be bribery and also be considered obstructing justice. Under either theory, McKinney's involvement was to purposely hinder the prosecution of Shine for the barbershop murders by preventing or obstructing Ladson as a witness.

{¶31} A criminal defendant is entitled to a unanimous verdict. Crim.R. 31(A). In *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, the plurality opinion of the Ohio Supreme Court stated, "[a]lthough Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Id*. at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element — which of several possible means the defendant used to commit the element of the crime); *see also State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 290, citing *Gardner* at ¶ 49 (jury unanimity is not required as to the means underlying the offense so long as substantial evidence supports each alternative mean). Although *Gardner* was a plurality opinion, the Ohio Supreme Court's subsequent decision in *Adams* makes clear that the Ohio Supreme Court still adheres to the juror unanimity rule stated in *Gardner*.

{¶32} The parties agree that the proper analysis to determine whether a defendant's Crim.R. 31(A) right has been violated is guided by *Gardner*, where "the law on juror unanimity distinguishes between the elements of the crime and the means by which a defendant commits an element." *Id*. at ¶ 37. Because the jury unanimity requirement in Crim.R. 31(A) has due

process implications, the Ohio Supreme Court has determined that "the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.'" *Id*. at ¶ 48.

{¶33} "In an 'alternative means' case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Id*. at ¶ 49

{¶34} However, in a "multiple acts" case, "several acts are alleged and any one of them could constitute the crime charged.  In these cases, the jury must be unanimous as to which act or incident constitutes the crime.  To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *Id*. at ¶ 50.

{¶35} To illustrate the distinction between the two types of cases, the Ohio Supreme Court in *Gardner* set forth three cases discussing "alternative means" — *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315 (alternative theories for the mens rea element of murder); *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31 (alternative predicate crimes that underlie aggravated murder; jurors need not agree on a single means for committing an offense); *State v. Thompson,* 33 Ohio St.3d 1, 514 N.E.2d 407 (1987) (trial court not required to instruct the jury that it needed to agree on type of rape, only that the jury unanimously agreed "sexual conduct" occurred).  *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 41-43, 51.  *See also State v. Fry*, 125 Ohio St.3d 163,

2010-Ohio-1017, 926 N.E.2d 1239 (discussion of alternative means regarding aggravated burglary, menacing by stalking, and witness-murder specification).

**{¶36}** The court further determined that its decision in *State v. Johnson*, 46 Ohio St.3d 96, 545 N.E.2d 636 (1989), recognized a different standard in a multiple-acts case. *Gardner* at ¶ 51-53. In *Johnson*, the court discussed the idea that "if a single count of an indictment can be divided into two or more 'distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously find that the defendant committed acts within one conceptual grouping in order to reach a guilty verdict." *Johnson* at 104-105, quoting *United States v. Gipson*, 553 F.2d 453, 458 (5th Cir.1977). But if a single count can be divided into a "single conceptual grouping of related facts," no specific instruction is necessary, because in such a case, the alternatives presented to the jury are not conceptually distinct, and a "patchwork" verdict is not possible. *Johnson* at 105. *See, e.g., Gipson* at 458-459 (defendant charged in a single count prohibiting a person from receiving, concealing, storing, bartering, selling or disposing of a known stolen vehicle; this charge involves two distinct conceptual groups of "housing" stolen goods (receiving, concealing, and storing) and the "marketing" of stolen goods (bartering, selling, and disposing)); *State v. Fortune*, 2011 ME 125, 34 A.3d 1115 (single count charging the defendant with the murder of three victims is a multiple acts case). Accordingly, to determine whether a case involves "alternative means" or "multiple acts," this court must look at the language of the indictment, and determine whether it alleges multiple "distinct conceptual groupings" of acts. *Johnson*, at 104.

**{¶37}** McKinney contends that this case is a "multiple acts" case, citing to this court's decision in *State v. Jackson*, 8th Dist. Cuyahoga No. 95920, 2011-Ohio-5920; whereas the state contends that this case is an "alternative means" case, citing to the analysis in *Gardner*.

**{¶38}** In *Jackson*, the defendant was charged with felonious assault (knowingly cause serious physical harm); domestic violence (knowingly cause or attempt to cause physical harm to a family household member); one count of child endangering (recklessly torture or cruelly abuse a minor) with a serious physical harm specification; and one count of child endangering (recklessly administer corporal punishment to a minor) with a serious physical harm specification. The jury found Jackson guilty of both counts of child endangering, but not guilty of the serious physical harm specifications, and guilty of domestic violence. He was found not guilty of felonious assault. *Jackson* at ¶ 2, 17.

**{¶39}** On appeal, Jackson challenged the indictment as being duplicitous, maintaining that each of the distinct acts of violence that he was accused of (burning of the forearm with a heated fork, whipping with a belt, or punching in the stomach) could have satisfied each of the felonious assault, domestic violence, and endangering children offenses, collectively or individually. Based on that scenario, this court concluded that the indictment was duplicitous and the case involved "multiple acts," rather than "alternative means"; and thus, the jury could have found him guilty of any of the offenses, but may not have reached a unanimous verdict as to which set of facts resulted in the offense. This court found plain error. *Id* at ¶ 47-48.

**{¶40}** Much like in Jackson, where this court noted that the record was not clear regarding which of the multiple acts the jury relied on in finding the defendant guilty, McKinney argues that he also could have been convicted for obstructing justice based on three different acts submitted to the jury — (1) ordering that Kennedy kill Ladson to hinder the prosecution of Shine; (2) bribing Ladson to change his witness statement to hinder the prosecution of Shine; or (3)

discarding his cell phone that potentially could link him to Ladson's murder.[3]  According to McKinney, whether the jury reached a unanimous verdict is uncertain.

{¶41} This court's discussion in *Jackson* of alternative means, multiple acts, and Crim.R. 31(A) was like unnecessary because the assignment of error raised in *Jackson* concerned a duplicitous indictment in violation Crim.R. 8(A), and whether he was denied due process of law under the Sixth Amendment because the state failed to apprise him of what occurrences formed the bases of the various charges he faced.  Accordingly, the dicta in *Jackson* has no application here.

{¶42} Moreover, we further find this case distinguishable from *Jackson* because McKinney is not challenging the indictment, but challenging the instructions given to the jury, and this case does not involve multiple distinct crimes, but instead multiple ways in which an element of a single crime may be satisfied.  This case is a juror unanimity case, invoking Crim.R. 31(A), and the defendant's due process rights under the Fourteenth Amendment to the U.S. Constitution.  *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995.

{¶43} Based upon our review of the relevant case law, the jury instructions, the indictment, and the evidence presented to the jury, we conclude that this is an alternative means case rather than a multiple acts case. The indictment charging McKinney with obstructing justice alleges one single conceptual grouping and each means is listed in the disjunctive.

{¶44} Accordingly, as *Gardner* explained, the jury was therefore not required to agree on the brute underlying facts of whether McKinney arranged to have Ladson killed to hinder the

---

[3] The jury was instructed that McKinney, himself, could not be the person that was "aided or assisted"; accordingly, the destruction of the cell phone was to hinder the discovery of himself.  Accordingly, there were only two remaining theories — the state's theory that he sent Kennedy to kill Ladson, or the theory that McKinney admitted to — that he sent Kennedy to obtain a statement recanting that he witnessed Shine commit the barbershop murders in exchange for money.

prosecution of Shine, or bribed Ladson to change his story to hinder the prosecution of Shine, because each set of facts would satisfy the elements of obstructing justice. The state maintained: "That's what count 16 deals with, the obstructing justice, their ability to hinder Douglas Shine from being brought to justice for his criminal conduct on February 5, 2015." (Tr. 3008.)

**{¶45}** Having found this case to be an alternative means case, we must determine whether a rational trier of fact could have found each means of committing the crime proven beyond a reasonable doubt. *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 49, *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 290. Based on the evidence presented, there is substantial evidence supporting each of the alternative means.

**{¶46}** The state presented direct and circumstantial evidence through the telephone calls between Shine and McKinney and the text communications between McKinney and Kennedy where the jury could reasonably conclude that McKinney aided or assisted in the murder of Ladson. Additionally, McKinney admitted that he sent Kennedy to see Ladson for the purposes of obtaining his "truthful statement," and that he was giving Ladson money for his family; thus the jury could reasonably conclude that McKinney's payment to Ladson for a recanted statement was for the purpose of hindering the prosecution of Shine. The fact that the jury acquitted McKinney of all charges relating to Ladson's death is irrelevant. *State v. Hicks*, 43 Ohio St.3d 72, 78, 538 N.E.2d 1030 (1989), citing *United States v. Powell*, 469 U.S. 57, 68, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *").

**{¶47}** In this case, the jury unanimously found the elements of "with purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of another for a crime, or to assist another to benefit from the commission of a crime, prevent or obstruct any person, by

means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, * * *." R.C. 2921.32(A)(6). McKinney engaged in a series of criminal actions intended to hinder the prosecution of Shine; the means by which McKinney purposely obstructed justice did not require jury unanimity. *See also State v. Schell*, 9th Dist. Summit No. 28255, 2017-Ohio-2641 (violation of protection order only required evidence of "recklessly" and a "violation"; it did not need to agree on which of three means by which the violation occurred).

**{¶48}** Accordingly, based on the record before this court, McKinney was not deprived of his right to a unanimous verdict pursuant to Crim.R. 31(A), and his Fourteenth Amendment due process right requiring the state to establish beyond a reasonable doubt all the elements of the offense was not violated. McKinney's first assignment of error is overruled.

## II. Consecutive Sentences

**{¶49}** In his second assignment of error, McKinney contends that the trial court erred in ordering consecutive sentences, and imposing the maximum penalty for all offenses.

**{¶50}** Appellate review of felony sentences is governed by R.C. 2953.08, which provides that this court may increase, reduce, modify a sentence, or vacate and remand for resentencing if we clearly and convincingly find that the record does not support the sentencing court's statutory findings, if applicable, or the sentence is contrary to law. R.C. 2953.08(G)(2).

### A. Maximum Sentences

**{¶51}** McKinney contends that the trial court's imposition of maximum sentences is clearly and convincingly unsupported by the record because these offenses are not the worst form of the offense. Specifically, he contends that the maximum sentence imposed for obtaining a fake identification card was contrary to law.

**{¶52}** Even though McKinney received a maximum sentence, there no longer exists a statutory requirement that the trial court make certain findings before imposing a maximum sentence. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 9. Therefore, we review McKinney's sentence to determine whether it is contrary to law. *Id.*, citing *State v. East*, 8th Dist. Cuyahoga No. 102442, 2015-Ohio-4375.

**{¶53}** A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *Hinton* at ¶ 10. Trial courts have "'full discretion'" to impose a sentence within the applicable statutory range. *Id.*, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15. A sentence within the statutory range, made with consideration of the sentencing factors, is "'presumptively valid.'" *Id.*, quoting *Collier* at ¶ 15.

**{¶54}** In this case, McKinney's sentence is within the applicable statutory range for each offense — maximum three years for each third-degree felony. R.C. 2929.14(A)(3). Additionally, the trial court stated on the record that it considered the purposes and principles of felony sentencing, and also noted this consideration in the sentencing journal entries. This court has held that a trial court fulfills its statutory duty by indicating it has considered the relevant sentencing factors. *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 14.

**{¶55}** Accordingly, the record clearly demonstrates that McKinney's sentence is within the statutory range, and that the trial court considered the statutory sentencing factors; the individual sentences imposed are not contrary to law.

**{¶56}** Regarding the tampering with records sentence itself, although no argument has been raised on appeal that the final 36-month sentence imposed on this offense was vindictive,

this court acknowledges that a court only speaks through its journal entry. *See State v. Roscoe*, 8th Dist. Cuyahoga No. 102191, 2015-Ohio-3876, ¶ 7. Therefore, despite the record demonstrating that the trial court did not "misspeak" when it initially ordered McKinney to only serve 24 months, the sentence was pronounced in open court, in McKinney's presence, and subsequently journalized as a 36-month sentence. *See* Crim.R. 43.

**B.   Consecutive Sentences**

**{¶57}** R.C. 2929.14(C) allows the court to require an offender to serve consecutive multiple prison terms for convictions on multiple offenses. Consecutive sentences may be imposed if the trial court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies — (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, *and* the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct, or (c) the offender's history demonstrates consecutive sentences are necessary to protect the public. *Id.*

**{¶58}** There are two ways a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C). *State v. Williams*, 8th Dist. Cuyahoga No. 100488, 2014-Ohio-3138, ¶ 4. Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *Id.*

**{¶59}** In this case, the trial court stated on the record that

consecutive sentences are necessary to protect the public from future crimes/and or to punish you and that consecutive sentences are not disproportionate to the seriousness of your conduct.

Obviously there's been talk about your criminal history, including a couple prior prison sentences. This can be considered to be a course of conduct, *and/or* the harm caused by these offenses committed was so great or unusual that no single term for any of these offenses committed as part of the course of conduct would adequately reflect your seriousness.

(Emphasis added.) (Tr. 3159-3160.)

**{¶60}** The trial court's finding that these crimes constituted a course of conduct "*and/or*" that the harm caused was so great or unusual that no single prison term for any of these offenses is contrary the statutory language of R.C. 2929.14(C)(4)(b). The statute requires the trial court to find both that (1) the offenses were committed as one or more courses of conduct, *and* (2) the harm caused was so great or unusual that a single prison term is not an adequate reflection on the seriousness of the conduct. The trial court was required to make both findings, if warranted, before finding that R.C. 2929.14(C)(4)(b) was satisfied. The trial court's inclusion of the word "or," was in error and leaves this court to speculate whether the court made the finding based on the conjunctive, as required, or in the disjunctive, which is contrary to law.

**{¶61}** Accordingly, we reverse McKinney's sentence and remand the case to the trial court for the limited purpose of complying with the statutory language of R.C. 2929.14(C)(4), and make the appropriate record-supported findings, if the court finds that the imposition of consecutive sentences is appropriate.

**{¶62}** Judgment affirmed in part, reversed in part, and remanded.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's convictions having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

————————

KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
PETER M. HANDWORK, J.,* CONCUR


*(Sitting by assignment: Judge Peter M. Handwork, retired, of the Sixth District Court of Appeals).