[Cite as *State v. Holmes*, 2026-Ohio-736.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff- Appellee,           :

                                  No. 115123

v.                                      :

ANTHONY HOLMES,                         :

     Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  March 5, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-681351-K and CR-24-690934-B

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew F. Rogalski and Samantha M. Sohl, Assistant Prosecuting Attorneys, *for appellee*.

Eric M. Levy, *for appellant*.

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Anthony Holmes ("Holmes") appeals from the judgment of his convictions for interfering with civil rights, dereliction of duty,

tampering with records, and telecommunications fraud. On appeal, Holmes challenges 1) the sufficiency of the evidence supporting his convictions; 2) the jury's findings of guilt, alleging that his convictions are against the manifest weight of the evidence; 3) the verdict forms signed by the jury with respect to his tampering-with-records conviction; 4) the trial court's denial of his motion to compel the mental-health records of a State's witness; 5) the constitutional effectiveness of his counsel and the trial court's failure to sever his offenses from those of his codefendant; 6) his counsel's failure to object to the jury instructions provided to the jury; 7) his conviction for telecommunications fraud and his counsel's effectiveness, alleging that a recent amendment to telecommunications-fraud statute rendered it inapplicable to him and that the jury should have been instructed as such; 8) the effectiveness of his counsel and alleges he was denied his right to a unanimous verdict on his tampering-with-records conviction since the indictment specified multiple records that could have been affected; and 9) his trial counsel's failure to request, and the trial court's failure to merge, his convictions for tampering with records and telecommunications fraud prior to sentencing.

{¶ 2} Upon a thorough review of the record and applicable law, we overrule each of Holmes's assignments of error. The convictions and sentences are affirmed.

## I. Background Overview

### A. Relevant Facts

{¶ 3} On October 3, 2021, Da'Shawn Allen ("Allen") was operating a stolen vehicle. Allen testified that at some point while he was driving, the East Cleveland

police activated their lights and attempted to initiate a traffic stop. Rather than stopping, Allen fled, taking the police on a lengthy chase through Cleveland. Allen stated that during the chase, he was unable to stop his vehicle because when he began to slow down to stop, the police vehicles kept "bumping" into his car. Allen explained the police were hitting his vehicle, "trying to make me go up the road." The pursuit ended when a two-door white Challenger crashed into Allen's vehicle, ejecting him from the vehicle.

{¶ 4} Anthony Holmes was one of the East Cleveland police officers involved in the pursuit of Allen. Holmes testified that at around 8 or 9 o'clock in the evening, he heard about the pursuit over the radio and joined the chase as backup. Holmes's partner, Tristan Homan ("Homan"), was in the passenger seat during the pursuit. Holmes eventually became the lead vehicle in the chase, traveling approximately one or two lengths behind Allen's vehicle. Holmes testified that throughout the pursuit, Allen kept "brake-checking" him. Holmes explained that "brake-checking" occurs when a suspect accelerates their vehicle and then "slow[s] down real fast."

{¶ 5} At a point during the pursuit, Holmes's vehicle collided with Allen's vehicle. Footage captured from Homan's body camera that was worn during the chase was introduced at trial. A few moments prior to the collision, Holmes is heard saying something to the effect of "he ain't losing us." Holmes's vehicle then accelerated, ran a red light, and is heard colliding into Allen's vehicle. Holmes would later tell investigators that he struck Allen's vehicle. A few moments after the collision, Holmes instructs Homan to "tell them they struck our vehicle." Homan is

heard radioing dispatch, "Headquarters, be advised, vehicle just brake-checked us striking the front of 3134. We are still operational."

{¶ 6} After Allen was arrested, Holmes's codefendant, Ian W. McInnes, authored a police report concerning the pursuit. Within that report, with respect to the collision between Holmes's and Allen's vehicles, the report indicates that "[Allen] intentionally stopped to cause Unit 3134 to strike him.[1] Allen also attempted to strike Cleveland Police Unit 254 while east on Lorain Ave."

## B. Indictments

{¶ 7} In May 2023, Holmes was charged in Cuyahoga C.P. No. CR-23-681351, in a multicount indictment, along with ten codefendants concerning multiple different incidents. The charges relevant to Holmes in this appeal relate to the traffic stop and arrest of Allen on October 3, 2021. These counts included the following:

> 46. Attempted felonious assault, in violation of R.C. 2923.02/2903.11(A)(1), a felony of the third degree;
>
> 47. Assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree;
>
> 48. Interfering with civil rights, in violation of R.C. 2921.45(A), a misdemeanor of the first degree;
>
> 49. Dereliction of duty, in violation of R.C. 2921.44(B), a misdemeanor of the second degree;
>
> 50. Tampering with records, in violation of R.C. 2913.42(A)(1), a felony of the third degree;

---

[1] Unit 3134 is Holmes's vehicle number.

51. Telecommunications fraud, in violation of R.C. 2913.05(A), a felony of the fifth degree.

{¶ 8} Holmes was also listed as a defendant in Counts 57, 59, 60, 61, and 62 of the indictment, but these charges were later dismissed by the State and reindicted in a second, separate indictment in Cuyahoga C.P. No. CR-24-690934, which included charges for tampering with evidence, telecommunications fraud, obstructing justice, obstructing official business, and dereliction of duty. The issues raised by Holmes in this appeal all relate to his convictions and sentences arising from the first indictment in Case No. CR-23-681351.

## C. Severance

{¶ 9} On January 23, 2024, in Case No. CR-23-681351, the State filed a motion to sever the defendants listed in the indictment, to be tried in two separate trials. On March 24, 2024, the trial court denied in part and granted in part the State's motion. The trial court severed the indictment to be tried in three separate trials, known as Trial A, Trial B, and Trial C. Trial C is relevant to this appeal, which involves Holmes's convictions for interfering with civil rights, dereliction of duty, tampering with records, and telecommunications fraud. Holmes was ultimately tried with his codefendant McInnes.

## D. Trial

{¶ 10} A jury trial for Holmes and McInnes began on October 7, 2024. With respect to Holmes, the jury returned a verdict finding him guilty of the following counts set forth in the indictment: Count 48, interfering with civil rights; Count 49,

dereliction of duty; Count 50, tampering with records; and Count 51, telecommunications fraud. The jury returned a verdict of not guilty with respect to Counts 46 and 47, attempted felonious assault and assault, respectively.[2]

**E. Sentencing**

{¶ 11} Sentencing was held on April 14, 2025. Prior to sentencing, the trial court merged Count 49 into Count 50. The court imposed a jail term of 180 days on Count 48; a prison term of 12 months on Count 50; and a prison term of 12 months on Count 51. The sentences were run concurrently for a total aggregate prison term of 12 months.

**F. Appeal**

{¶ 12} Holmes appeals his convictions, raising nine assignments of error for our review:

> 1. The trial court erred by entering a judgment of conviction for tampering with records, telecommunications fraud, interfering with civil rights, and dereliction of duty because the convictions were not supported by sufficient evidence.
>
> 2. [Holmes's] convictions for tampering with records, telecommunications fraud, interfering with civil rights, and dereliction of duty are against the manifest weight of the evidence.
>
> 3. The trial court erred when it convicted [Holmes] of a third-degree felony in [Count 50] when the jury verdict only supported a conviction for a first-degree misdemeanor.
>
> 4. The trial court erred by denying [Holmes's] motion to compel the mental health records of the state's key witness, thereby violating

---

[2] On January 10, 2025, in Case No. CR-24-690934, prior to sentencing, Holmes entered a plea of guilty to two counts of attempted communications fraud.

[Holmes's] constitutional rights to confrontation, compulsory process, and a fair trial.

5. Trial counsel was ineffective and the trial court otherwise committed plain error by joining defendants for trial and admitting irrelevant and highly prejudicial evidence of other acts by codefendant officers, which violated [Holmes's] right to a fair trial.

6. Trial counsel was ineffective and the trial court otherwise committed plain error by providing the jury with an incorrect instruction on the definition of data for tampering with records.

7. Trial counsel was ineffective in failing to assert and the trial court otherwise committed plain error by failing to instruct the jury on the R.C. 2913.05(C)(2) exception precluding the conviction of law enforcement personnel for telecommunications fraud.

8. Trial counsel was ineffective and the trial court otherwise committed plain error by permitting the tampering with records count to proceed forward to a jury trial when count 50 of the indictment charged multiple facts.

9. Trial counsel was ineffective and the trial court otherwise committed plain error by failing to merge the convictions for tampering with records and telecommunications fraud.

## II. Law and Analysis

### A. First Assigned Error for Review — Sufficiency

{¶ 13} In his first assigned error for review, Holmes alleges that the State presented insufficient evidence to support his convictions for tampering with records, telecommunications fraud, interfering with civil rights, and dereliction of duty. After a thorough review of the record, we find that the evidence was sufficient to support the convictions for each of these offenses.

### 1. Standard of Review

{¶ 14} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,* 2024-Ohio-5003, ¶ 37 (8th Dist.), citing *State v. Cottingham,* 2020-Ohio-4220, ¶ 32 (8th Dist.). In reviewing a challenge based on sufficiency, we must "'determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.'" *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. A sufficiency review "is not a factual determination, but a question of law." *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 15} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'" *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.). And although each type of evidence has their obvious differences, "those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence." *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.). Our review of the evidence is not to determine "whether the state's

evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

## 2. Analysis

### a. Tampering With Records

{¶ 16} Holmes was convicted of tampering with records in violation of R.C. 2913.42(A)(1). R.C. 2913.42(A) provides, in relevant part:

> (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

> (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record[.]

### i. Purpose to Defraud

{¶ 17} Holmes first argues that the evidence presented at trial was insufficient to demonstrate that Holmes acted with the purpose to defraud. The term defraud "necessarily implies an element of deception." *State v. Truckey*, 2019-Ohio-407, ¶ 16 (11th Dist.). Accordingly, R.C. 2913.01(B) defines "defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."

{¶ 18} Holmes claims that the evidence was insufficient to demonstrate any alleged inaccuracies were made with fraudulent intent or that he did so to cause detriment to Allen or to receive a benefit to himself. The law does not require direct evidence of intent to support a conviction for tampering with records. Rather, intent may be proved by circumstantial evidence, "gathered from all the surrounding facts

and circumstances." *State v. Dickerson,* 2023-Ohio-4787, ¶ 46 (8th Dist.), citing *State v. Cammon,* 2018-Ohio-3183, ¶ 19 (8th Dist.).

{¶ 19} To begin, the State introduced the body-camera video of Holmes's partner, Homan, who was in the passenger seat of Holmes's vehicle when he collided with Allen. The video shows that just prior to colliding with Allen, Holmes is heard saying, "[H]e ain't losing us." The vehicle is heard accelerating just before running a red light and subsequently striking Allen's vehicle. Approximately 10 seconds after the collision, Allen is heard telling Homan, something to the effect of "tell them they struck our vehicle." Homan is heard radioing dispatch, "Headquarters, be advised, vehicle just brake-checked us striking the front of 3134. We are still operational." The State introduced an interview Holmes later conducted with investigators where he admitted that he struck Allen's vehicle. A reasonable jury could determine that the statement by Holmes, that "they struck our vehicle," was incorrect or false.

{¶ 20} The State also presented evidence demonstrating why Holmes would instruct Homan to make a false statement over the radio. Testimony was presented concerning East Cleveland Police Department's policies concerning "PIT" maneuvers. A "PIT" maneuver is a technique used to stop a vehicle by hitting it in its rear corner panel. Robert Prevot testified as an expert on use of force and police policies. He testified that use of the "PIT" maneuver or ramming another vehicle could be potentially fatal.

{¶ 21} Prevot testified that the use of the "PIT" maneuver implemented by Holmes was not a justified use of force. He noted that according to the East

Cleveland Police policies, prior to performing a "PIT" maneuver, an officer must have training and receive prior approval from a supervisor. The evidence presented at trial demonstrated that Holmes did not receive approval prior to colliding with Allen. Further, Holmes testified that never received training in "PIT" maneuvers. A reasonable jury could determine that Holmes instructed Homan to radio an incorrect or false statement to cover up his own violation of East Cleveland Police policies to avoid potential discipline.

### ii. Facilitation of a Fraud

{¶ 22} Holmes next argues that the evidence was insufficient to demonstrate that he knowingly facilitated a fraud. Holmes argues that there was insufficient evidence to demonstrate that he was the person that directly tampered with any records since he neither made the radio broadcast nor wrote the police report that was ultimately affected by instructing Homan to issue a false broadcast.

{¶ 23} As discussed above, there was sufficient evidence for the jury to determine that Holmes instructed Homan to make a false radio call to benefit himself. The fact that he was not the person that made the radio broadcast or authored the police report is of no significance. Deception is defined under the general fraud definitions as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another[.]" R.C. 2913.01(A). A person acts "knowingly," regardless of their purpose, if they are

"aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 24} As discussed above, the State presented sufficient evidence for the jury to determine that Holmes instructed Homan to make a false call over the radio. Holmes also testified that he was aware that multiple people had access to transmissions made over the radio, including dispatch, the chief, as well as other cruisers on the road. He also testified that he was aware that information transmitted over the radio would end up in police reports. Special Investigator Robert DeSimone of the Cuyahoga County Prosecutor's Office ("DeSimone") testified similarly, noting that the information conveyed over the radio "trickled down to where it goes into official police reports, government documents."

{¶ 25} The fact that Holmes did not personally author the police report or make the radio call does not shield him from a tampering-with-records conviction. Testimony was presented demonstrating that Holmes was aware that the information he instructed Homan to transmit over the radio would be heard by multiple people and eventually make its way into official police reports. A reasonable jury could determine that Holmes knowingly intended to falsify these records, notwithstanding the fact that he may not have personally authored the report or transmitted the radio call he instructed Homan to make. As a result, the evidence presented at trial was sufficient to support Holmes's conviction for tampering with records.

## b. Telecommunications Fraud

{¶ 26} Holmes was also convicted of telecommunications fraud, in violation of R.C. 2913.05(A). R.C. 2913.05(A) provides:

> No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

{¶ 27} Holmes once again argues that the evidence was insufficient to demonstrate that he intended to defraud anyone. As discussed above, and applicable here, a reasonable jury could determine that Holmes instructed Homan to issue an incorrect or false statement over the radio to cover up his own violation of East Cleveland Police policies.

{¶ 28} Holmes also argues that he did not tell Homan to radio that Allen "brake checked" them. Rather, Holmes noted that Homan added the "brake checked" language himself. Therefore, Holmes contends that "[a]ny fraudulent element to the broadcast was added by Homan and not as a result of a command by [Holmes] to broadcast a fraud."

{¶ 29} While the fraudulent transmission was not word-for-word identical to the false statement Holmes instructed Homan to make, Homan did state that "vehicle just brake-checked us *striking the front of 3134*" per Holmes's instruction. From the evidence presented, a reasonable jury could determine that a fraudulent

statement was transmitted over the radio at the behest of Holmes. And that Homan did broadcast a false statement at Holmes's request.

{¶ 30} As discussed above, a reasonable jury could determine that Holmes's instruction to Homan to "tell them they struck us" was made with the purpose to defraud. Homan's body camera demonstrates that it was not until Holmes instructed Homan to radio the false statement that Homan did so. The fact that the fraudulent statement was not in the exact form Holmes requested does not preclude a reasonable factfinder from determining that Holmes had caused a false statement to be transmitted over the radio "with purpose to execute or otherwise further the scheme to defraud."

{¶ 31} Next, Holmes claims that to support a conviction for telecommunications fraud the evidence must demonstrate that Holmes intended to defraud Allen of something of value. He is incorrect. The plain language of R.C. 2913.05, telecommunications fraud, does not require the victim to be deprived of something of value to support a conviction for telecommunications fraud. Value is not an element of the offense. Rather, "value of the benefit obtained by the offender or of detriment to the victim of the fraud" is only necessary with respect to enhancing the felony of the offense from a felony of the fifth degree to either a felony of the first, second, third, or fourth degree. R.C. 2913.05(E)(1). Since Holmes was charged and convicted of telecommunications fraud, a felony of the fifth degree, the State was not required to prove the value of a benefit or a detriment to the victim.

{¶ 32} Finally, Holmes argues that he was exempt from conviction under the telecommunications statute pursuant to an amendment to the statute on March 2, 2022. This is not a sufficiency argument, so we decline to address it here. Since Holmes raises this issue in assignment of error No. 7, we will address this claim below.

### c. Interfering With Civil Rights and Dereliction of Duty

{¶ 33} Holmes was also convicted of interfering with civil rights, in violation of R.C. 2921.45(A), and dereliction of duty, in violation of R.C. 2921.44(B). Interfering with civil rights, R.C. 2921.45(A), provides:

> No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

{¶ 34} Dereliction of duty, in violation of R.C. 2921.44(B), provides:

> No law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding.

{¶ 35} Holmes alleges that the evidence was insufficient to support a conviction for interfering with civil rights and dereliction of duty because the testimony of the State's main witness, Allen, "was fraught with credibility issues[.]" However, "the credibility of witnesses is a matter primarily for the trier of fact and is not to be considered in a sufficiency argument as credibility goes to the weight of the evidence." *State v. Erker,* 2019-Ohio-3185, ¶ 83 (8th Dist.). As a result, whether Allen's testimony was credible "has no bearing on our sufficiency analysis." *Id.*

{¶ 36} As a result, viewing the evidence in the light most favorable to the State, we find that Holmes's convictions for tampering with records, telecommunications fraud, interfering with civil rights, and dereliction of duty are supported by sufficient evidence. Accordingly, Holmes's first assignment of error is overruled.

## B. Second Assigned Error for Review – Manifest Weight

{¶ 37} In his second assigned error for review, Holmes alleges that his convictions for tampering with records, telecommunications fraud, interfering with civil rights, and dereliction of duty are against the manifest weight of the evidence. After a thorough review of the record, we determine that Holmes's convictions are not against the manifest weight of the evidence.

### 1. Standard of Review

{¶ 38} In contrast to a sufficiency challenge, a challenge with respect to the "weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief." (Cleaned up.) *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.). The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained ""only in the exceptional case in which the evidence weighs heavily against the conviction."" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**2. Analysis**

{¶ 39} Holmes alleges that his "convictions rested almost entirely on the testimony of [Allen]" and that "the record demonstrates [Allen] was suffering from multiple, severe, and untreated psychiatric disorders at the time of the incident." Holmes alleges that when Allen's testimony is weighed against Holmes's own testimony, "it is clear that the jury lost its way."

{¶ 40} To begin, it cannot be said that Holmes's convictions rested almost entirely on Allen's testimony. Homan's body camera was introduced at trial, documenting the moments leading up to the collision, as well as Holmes's instruction to Homan. As discussed above, Holmes can be heard saying something to the effect of, "he ain't losing us." Holmes's vehicle accelerated, ran a red light, and was heard colliding into Allen's vehicle. A few moments after the collision, Holmes is heard instructing Homan to "tell them they struck our vehicle." The State also introduced an interview Holmes did with investigators wherein Holmes admitted that he struck Allen's vehicle.

{¶ 41} With respect to Allen's credibility, when conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder

of fact and, "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *Z.C.,* 2023-Ohio-4703, at ¶ 14. The underlying rationale of giving deference to the findings of the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 42} Here, the jury was made aware of Allen's mental-health issues at trial. The State questioned Allen concerning his mental-health diagnoses. Allen testified that he had been diagnosed with schizophrenia and bipolar disorder and that he took numerous medications to treat his mental-health issues. He also testified that he was not on these medications at the time of the incident. Holmes's attorney cross-examined Allen concerning his mental-health issues.

{¶ 43} Having been able to view the testimony of Allen and Holmes, as well as Homan's body-camera footage leading up the collision, the jury was in the best position to weigh the competing credibility determinations between Allen's and Holmes's testimony. As a result, we cannot say that Holmes's convictions were against the manifest weight of the evidence presented at trial.

{¶ 44} Accordingly, Holmes's second assignment of error is overruled.

## C. Third Assigned Error for Review — Verdict Form for Tampering With Records

{¶ 45} In his third assigned error for review, Holmes argues that the trial court erred in convicting him of a third-degree felony for tampering with records pursuant to R.C. 2913.42(A) because the jury verdict forms only supported a conviction for a misdemeanor of the first degree. As a result, Holmes contends that his tampering-with-records conviction must be reduced to a misdemeanor of the first degree. He is incorrect.

{¶ 46} A violation of tampering with records under R.C. 2913.42(A) is generally a misdemeanor of the first degree. R.C. 2913.42(B)(1)(2)(a) and 2913.42(B)(3)(a). But if the "writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity, [the offense is] a felony of the third degree." R.C. 2913.42(B)(4).

{¶ 47} Here, with respect to the tampering-with-records offense, the verdict form, as relayed by the trial court to the jury, provided:

> We, the jury in this case, being duly impaneled and sworn, do find the defendant, Anthony Holmes [_____] of tampering with records, in violation of 2913.42(A)(1) of the Ohio Revised Code, as charged in count 13.[3]

{¶ 48} Holmes contends that the verdict forms failed to include "either the degree of the offense or the enhancing element" and therefore his conviction for

---

[3] The counts were renumbered prior to trial.

tampering with records should be reduced to the least severe degree of the offense, a misdemeanor of the first degree.

### 1. Applicable Law

{¶ 49} R.C. 2945.75 provides, in relevant part:

> (A) When the presence of one or more additional elements makes an offense one of more serious degree:
>
> . . .
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶ 50} The verdict form does not state the degree of the tampering-with-records offense of which Holmes was found guilty. Nor does it provide the additional enhancing factor for which would support the enhancement.

{¶ 51} Nonetheless, the Ohio Supreme Court has recently held "that the requirement in R.C. 2945.75(A)(2) that a guilty verdict state either the degree of the offense of which the offender is found guilty or additional element or elements is satisfied by a verdict form that cites the statutory section or sections mandating that the defendant be convicted of a higher-level offense." *State v. Mays,* 2024-Ohio-4616, ¶ 17. In *Mays,* the defendant was convicted of violating a protection order in violation of R.C. 2919.27(A) and (B), a fifth-degree felony. *Id.* at ¶ 2. A conviction for violating a protection order is generally a misdemeanor of the first degree. R.C. 2919.27(B)(2). However, the degree of the offense for violating a protection

order may be enhanced to a felony of the fifth-degree if certain conditions are met. R.C. 2919.27(B)(3). The court in *Mays* held that "[b]ecause the verdict form . . . cited R.C. 2919.27(B)(3), which specifies that Mays's offense was a felony of the fifth degree, we conclude that the verdict form complied with R.C. 2945.75(A)(2)." *Mays* at ¶ 17.

## 2. Analysis

{¶ 52} In this case, the statutory provision that enhances a tampering-with-records charge to a felony of the third degree is R.C. 2913.42(B)(4). The verdict form does not cite R.C. 2913.42(B)(4). Rather, the verdict form cites R.C. 2913.42(A)(1), which is the general subsection defining what constitutes a charge for tampering with records. As such, there is nothing in the verdict form stating the degree of the offense, the additional elements necessary to enhance the offense, or even a cite to the statutory provision mandating that Holmes be convicted of the higher-level offense. For these reasons, the verdict form did not comply with R.C. 2945.75(A)(2). But this does not conclude our analysis.

### i. Plain Error

{¶ 53} In *Mays,* the Ohio Supreme Court held that even if there is an error in the verdict form, a defendant that failed to object to the verdict form at trial must still demonstrate plain error. *Mays* at ¶ 139 (holding "that plain-error analysis does apply when a defendant fails to raise an objection to a verdict form's alleged noncompliance with R.C. 2945.75(A)(2)"), citing *State v. Eafford,* 2012-Ohio-2224, ¶ 11 - 12.

{¶ 54} Pursuant to Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. The party raising plain error must demonstrate "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *State v. Buttery,* 2020-Ohio-2998, ¶ 7, citing *State v. Quarterman,* 2014-Ohio-4034, ¶ 16.

{¶ 55} Here, Holmes has failed to demonstrate that but for the faulty verdict form, the outcome of the trial would have been different. It was uncontested that the police reports or the radio broadcast that were the subject of Holmes's tampering-with-records conviction were "kept by or belong[] to a local, state, or federal governmental entity[.]" He has failed to direct us to anything in the record that would demonstrate that had the verdict form strictly complied with R.C. 2945.75(A)(2), the result would have been any different. As a result, Holmes has failed to demonstrate that the verdict form's deviation from R.C. 2945.75(A)(2) affected his substantial rights, or that the outcome would have been different.

{¶ 56} Accordingly, we overrule Holmes's third assignment of error.

**D.** **Fourth Assigned Error for Review — Motion to Compel Medical Records of Allen**

{¶ 57} In his fourth assigned error for review, Holmes contends that the trial court erred when it denied his motion to compel Allen's mental-health records without first holding an incamera inspection. Upon a thorough review of the record and applicable law, we disagree.

**1. Standard of Review**

{¶ 58} We generally review a trial court's order concerning discovery issues for an abuse of discretion. *State v. Counts,* 2022-Ohio-3666, ¶ 16 (8th Dist.), citing *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.,* 2006-Ohio-4574, ¶ 9. "However, a trial court's interpretation of law governing privileged matters is a question of law that we review de novo[.]" *State v. Kelley,* 2024-Ohio-157, ¶ 31 (8th Dist.), citing *Ward v. Summa Health Sys.,* 2010-Ohio-6275, ¶ 13. As such, our standard of review "depends on whether the asserted privilege presents a question of law or a question of fact." *Id.,* citing *Randall v. Cantwell Mach. Co.,* 2013-Ohio-2744, ¶ 9. When interpreting statutory language to determine whether the sought after information is privileged, we apply a de novo standard of review. *Id.*

{¶ 59} Here, Holmes does not dispute that the mental-health records of Allen are privileged records. As such, our review involves factual questions and we operate under an abuse-of-discretion standard. *See id.* at ¶ 32. "The term 'abuse of discretion' means a ruling that is unreasonable, arbitrary, or unconscionable." *State*

*v. McAlpin,* 2026-Ohio-148, ¶ 14.   However, "[c]ourts do not have discretion to erroneously apply the law."  *Shiftmed, LLC v. Westchester Parkway Consulting, LLC,* 2025-Ohio-1554, ¶ 18 (8th Dist.), citing *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 39.  "We must be mindful that when applying the abuse-of-discretion standard 'we should not substitute our judgement for that of the trial court.'"  *T.C. v. R.B.C.,* 2025-Ohio-1544, ¶ 10 (8th Dist.), quoting *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.).

### 2. Analysis

{¶ 60} Holmes made an oral motion to the trial court to obtain and review a health report of Allen that had been prepared by the mental-health court in one of Allen's criminal cases.  Holmes's attorney claimed that that the records were necessary to determine whether "the mental illnesses that he's currently suffering from in any way might affect his ability to remember something from three years ago, or more, in relating them to the jury, I think that's fair impeachment grounds for consideration."  The State deferred to the trial court as to Holmes's request.

{¶ 61} In a criminal case, discovery is governed by Crim.R. 16, which provides in relevant part, that the State

> provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule[.]

Crim.R. 16(B).

{¶ 62} Crim.R. 16(J)(3) provides, in relevant part, that the following materials are not subject to disclosure: "[m]aterials that by law are subject to privilege, or confidentiality, or are otherwise prohibited from disclosure." As discussed above, Holmes does not dispute that Allen's mental-health records are privileged. Therefore, they were not subject to disclosure.

{¶ 63} Nonetheless, under certain circumstances, "a defendant is entitled to have confidential records reviewed in camera by the trial court." *Kelley,* 2024-Ohio-157, at ¶ 43 (8th Dist.), citing *Pennsylvania v. Ritchie,* 480 U.S. 39, 58 (1987). However, "a defendant may not require the trial court to search through confidential records 'without first establishing a basis for his [or her] claim that it contains material evidence.'" *Id.,* quoting *Ritchie* at 58, fn. 15. Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Bagley,* 473 U.S. 667, 682 (1985). "The mere possibility that the evidence might have helped the defense does not establish 'materiality.'" *State v. Badran,* 2008-Ohio-6649, ¶ 17 (8th Dist.), citing *Wagster v. Overberg,* 560 F.2d 735, 741 (6th Cir. 1977).

{¶ 64} Here, the basis for Holmes's motion to compel was that it was necessary for him to determine whether there was anything additional in the requested mental-health report for impeachment purposes. Holmes was aware of Allen's mental-health issues prior to trial. And at trial, Allen testified that he had been diagnosed with schizophrenia and bipolar disorder and that he took numerous

medications to treat his mental-health issues. Allen also testified that he was not on these medications at the time of the incident. And Holmes's attorney had an opportunity to fully cross-examine Allen at trial concerning his mental-health issues. And finally, during close, Holmes's attorney stated:

> It's a difficult situation, you know, Da'Shawn Allen suffered greatly from mental health issues. *I don't think that has a lot to do with this case. I really don't.* But you will see in the medical records that he was paranoid. You will see that there was a schizophrenia active at the time he wasn't on his meds. And he absolutely admitted he wasn't on his meds and he talked about how he was without it, but that does affect how you view things and how you think what the police officers are doing. If you're paranoid and your car strikes, they are trying to hurt me. But he didn't say that. He said, they stopped me from stopping. That's all it was until later.

(Emphasis added.)

{¶ 65} Here, Holmes failed to demonstrate that the Allen's mental-health report from the mental-health court contained any evidence that would have aided or furthered his impeachment efforts to the extent that it would have affected the trial. As such, Holmes has failed to make a sufficient showing that there was any material or exculpatory information in the mental-health record of Allen that he was not already aware of. As such, the trial court did not abuse its discretion in denying Holmes's motion to compel without first holding an incamera inspection.

{¶ 66} Accordingly, Holmes's fourth assignment of error is overruled.

### E.     Plain Error and Ineffective Assistance of Counsel Claims

{¶ 67} In his fifth, sixth, seventh, eighth, and ninth assigned errors for review, Holmes alleges that he was afforded ineffective assistance of counsel and that the trial court committed plain error on several separate issues.

### 1. Plain-Error Review

{¶ 68} As discussed above, pursuant to Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d 91 (1978), at paragraph three of the syllabus. The party raising plain error must demonstrate "that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice." *Buttery,* 2020-Ohio-2998, at ¶ 7, citing *Quarterman,* 2014-Ohio-4034, at ¶ 16.

{¶ 69} "Furthermore, "'where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.""" *State v. Young,* 2020-Ohio-462, ¶ 103 (10th Dist.), quoting *State v. Roy,* 2014-Ohio-4587, ¶ 20 (10th Dist.), quoting *State v. Carson,* 2006-Ohio-2440, ¶ 51 (10th Dist.). *See also State v. Rogers,* 2015-Ohio-2459, ¶ 22 (holding that with respect to a plain error analysis, "[t]he accused is . . . required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing

ineffective assistance of counsel claims"), citing *United States v. Dominguez Benitez,* 542 U.S. 74, 81-83 (2004).

**2. Ineffective Assistance of Counsel Review**

{¶ 70} "In order to substantiate a claim for ineffective assistance of counsel, a defendant must satisfy a two-prong test." *State v. Jefferson,* 2025-Ohio-2008, ¶ 14 (8th Dist.). "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To establish this first prong, a "'defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Id.* at 142, quoting *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "'[B]ecause of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" *Bradley* at 142, quoting *Strickland* at 689.

{¶ 71} "'[Second], and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.'" *Bradley* at 141-142, quoting *State v. Lytle*, 48 Ohio St.2d 391, 396-397 (1976). To establish that one has been "prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would be different." *Id.* at 143.

### F. Fifth Assigned Error for Review – Joinder

{¶ 72} In his fifth assigned error for review, Holmes argues that the trial court erred in its decision to join Holmes's charges for trial with the charges of his codefendant McInnes and that his attorney was ineffective for failing to move the court to sever them. After a thorough review of the record, we find that the trial court did not err in joining the offenses of Holmes and McInnes and trying them together.

#### 1. Standard of Review

{¶ 73} Generally, "we review the trial court's decision on joinder for an abuse of discretion." *State v. Lee*, 2017-Ohio-1449, ¶ 15 (8th Dist.), citing *State v. Dean*, 2015-Ohio-4347, ¶ 58. In this case, however, Holmes did not seek severance pursuant to Crim.R. 14 and has waived all but plain error. *State v. Miller,* 2023-Ohio-1141, ¶ 83 (8th Dist.).

#### 2. Applicable Law

{¶ 74} Crim.R. 8(A) governs joinder of offenses in a single indictment. It provides that two or more offenses may be joined in a single indictment where they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or a part of a course of criminal conduct." Crim.R. 8(A). "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience

to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas,* 61 Ohio St.2d 223, 225 (1980). As such, "joinder is the rule rather than the exception." *State v. Hudson,* 2013-Ohio-1992, ¶ 10 (8th Dist.). "Further, joinder is to be 'liberally permitted.'" *State v. Wardlaw,* 2025-Ohio-2221, ¶ 41 (8th Dist.), quoting *State v. Schaim,* 65 Ohio St.3d 51, 58 (1992).

{¶ 75} In turn, Crim.R. 14 provides a defendant relief from prejudicial joinder and provides, in relevant part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶ 76} "'While there is always the possibility of prejudice from joinder of offenses, once the state has concluded its case, the defendant bears the burden of demonstrating actual prejudice from the joinder.'" *Miller,* 2023-Ohio-1141, at ¶ 79 (8th Dist.), quoting *State v. Cisternino,* 1994 Ohio App. LEXIS 4856 (8th Dist. Oct. 27, 1994). "The defendant 'must show "compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever."'" *Wardlaw* at ¶ 45, quoting *State v. Hand,* 2006-Ohio-18, ¶ 166, quoting *State v. Torres*, 66 Ohio St.2d 340, 343 (1981).

{¶ 77} The State may refute a defendant's claim of prejudice in one of two ways: "(1) a showing that the evidence of each crime is simple and direct (the 'joinder test'), or (2) evidence of the other crimes would be admissible even if the counts were severed (the 'other acts' test)." *Miller* at ¶ 80, citing *State v. Lott,* 51 Ohio St.3d 160, 163 (1990). "The 'joinder test' is satisfied when the evidence presented at trial is 'simple and direct.'" *Wardlaw* 2025-Ohio-2221, at ¶ 46 (8th Dist.), citing *State v. Belle,* 2019-Ohio-787, ¶ 24-25 (8th Dist.). "'Simple and direct' evidence means the evidence of each crime is 'so clearly separate and distinct as to prevent the jury from considering evidence of [one crime] as corroborative as the other.'" *Miller* at ¶ 81, quoting *Belle* at ¶ 25.

{¶ 78} The purpose of the "joinder test" is to "prevent the jury from improperly considering evidence of various crimes as corroborative of each other." *Miller* at ¶ 82, citing *State v. Echols,* 128 Ohio App.3d 677, 694 (1st Dist. 1998). Thus, "a trier of fact is believed capable of segregating the proof of multiple charges when the evidence to each of the charges is uncomplicated." *State v. Lunder,* 2014-Ohio-5341, ¶ 33 (8th Dist.), citing *Torres* at 343-344. As a result, "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'" *Wardlaw* at ¶ 82, quoting *State v. Echols,* 2015-Ohio-5138, ¶ 16 (8th Dist.).

{¶ 79} The "other acts" test, on the other hand, is satisfied where the State can show that the evidence of the other offenses would have been admissible as

"other acts" under Evid.R. 404(B), if the offenses had been tried separately. *Wardlaw* at ¶ 48, citing *Lott* at 163. However, when the evidence is "simple and direct" under the joinder test, "an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B)." *Miller,* 2023-Ohio-1141, at ¶ 20 (8th Dist.). "Consequently, '[i]f the state can meet the [requirements of] the joinder test, it need not meet the requirements of the stricter "other acts" test.'" *Wardlaw* at ¶ 48, quoting *State v. Franklin,* 62 Ohio St.3d 118, 122 (1991).

### 3. Analysis

{¶ 80} After a thorough review of the record, we determine that the evidence supporting Holmes's convictions was simple and direct. There is nothing to suggest that the jury was confused by the evidence or influenced by the evidence introduced with respect to the crimes of his codefendant McInnes.

{¶ 81} Holmes contends that the evidence introduced in support of McInnes's crimes was irrelevant to the charges against Holmes and that "[i]ts only purpose was to paint a broad picture of misconduct within the East Cleveland Police Department, creating a classic case of guilty by association." However, he does not direct this court to any particular point in the record to support this claim. Holmes's "conclusory and speculative arguments are not sufficient to demonstrate prejudice by joinder." *Wardlaw,* 2025-Ohio-2221, at ¶ 49 (8th Dist.), citing *State v. Porcher,* 2011-Ohio-5976, ¶ 2 (2d Dist.) (conclusory allegations of prejudice insufficient); *State v. Gravely,* 2010-Ohio-3379, ¶ 36 (10th Dist.) (speculative arguments of

prejudice insufficient); *State v. Torres,* 66 Ohio St.2d at 344 (speculative arguments of prejudice insufficient).

{¶ 82} Even if Holmes had demonstrated actual prejudice because of joinder, the evidence supporting his convictions was simple and direct. Holmes's codefendant's charges concerned three separate assaults that occurred on February 25, 2020; February 14, 2022; and an assault on Allen that occurred upon Allen's arrest on October 3, 2021. Holmes's convictions involved actions that occurred prior to Allen's arrest on October 3, 2021; specifically, his collision with Allen's vehicle and Holmes's instruction to Homan to "tell them they struck our vehicle." The evidence presented with respect to McInnes's charges concerning the February 25, 2020 and February 14, 2022 incidents did not include Holmes nor did the evidence indicate that he was involved with the subsequent arrest and assault of Allen upon Allen's arrest on October 3, 2021.

{¶ 83} Throughout the presentation of its case, the State was careful to delineate Holmes's involvement with the pursuit of Allen and the assault that occurred upon Allen's arrest. For example, when questioning Investigator DeSimone, the jury heard the following exchange with the prosecutor:

> Prosecutor: And for clarity sake, is it safe to say that the conduct, words, and actions of Anthony Holmes were the subject of your investigation that happened before the ultimate crash, whereas the conduct of Ian McInnes was subject to the investigation for what happened after the crash and arrest, physical arrest of Da'Shawn Allen?
>
> DeSimone: That's correct, yes.

{¶ 84} Further, there is nothing to indicate that the jury was confused or unduly influenced by the evidence presented concerning the assaults that McInnes was charged with that occurred on different dates and the assault of Allen that occurred after the events that support Holmes's convictions in this case. To further undercut this point, the State notably points out in its brief that Holmes "was found not guilty of all uses of force, while McInnes was found guilty in three of the four incidents." Such a verdict demonstrates "that the jury was able to separate the evidence and consider it as to each count for each defendant individually."

{¶ 85} Here, the evidence was simple and direct, and Holmes failed to demonstrate that the jury was unable to separate the evidence presented in support of his convictions from the evidence presented with respect to his codefendant McInnes's charges. The trial court did not err in joining these offenses at trial, and accordingly, Holmes's attorney was not ineffective for failing to move to sever the charges.

{¶ 86} Holmes's fifth assignment of error is overruled.

### G. Sixth Assigned Error for Review — "Data" Jury Instruction

{¶ 87} In his sixth assigned error for review, Holmes argues that the trial court gave the jury an improper jury instruction with respect to what constitutes "data." He contends that had the jury been given the proper instruction for what constitutes "data" for a tampering-with-records offense he would not have been convicted of tampering with records. We disagree.

**1. Standard of Review and Applicable Law**

{¶ 88} Generally, "[t]rial courts have broad discretion in determining whether the evidence presented at trial was sufficient to warrant a particular jury instruction." *State v. Echevarria,* 2018-Ohio-1193, ¶ 27 (8th Dist.), citing *State v. Williams,* 2015-Ohio-172, ¶ 35 (8th Dist.). However, Holmes did not object to the trial court's jury instructions at trial. "'Pursuant to Crim.R. 30(A), the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the instructions unless the error amounts to plain error.'" *Cleveland v. King,* 2025-Ohio-3067, ¶ 30 (8th Dist.), quoting *State v. Jallah,* 2015-Ohio-1950, ¶ 88 (8th Dist.). Where a defendant fails to object to improper jury instructions at trial, "'the reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice.'" *Id.* at ¶ 34, quoting *State v. Adams,* 62 Ohio St.2d 151 (1980), paragraph three of the syllabus.

{¶ 89} Nonetheless, a trial court must "'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White,* 2015-Ohio-492, ¶ 46, quoting *State v. Comen,* 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Holmes alleges that the jury instructions with respect to the definition of "data" in support of a conviction of tampering with records is incorrect. As such, Holmes presents us with a question of law that we review de novo. *State v. Mincey,* 2018-Ohio-662, ¶ 27 (1st Dist.) (noting that an appellant's claim that the trial court left out an element of

complicity in its charge to the jury is an issue that is to be reviewed de novo); *see also Echevarria* at ¶ 27 (holding that "[w]hether jury instructions correctly state the law is a legal issue that an appellate court reviews de novo").

**2. Analysis**

**i. "Data" Instruction**

{¶ 90} The trial court instructed the jury that before they could find Holmes guilty of tampering with records they must find

> beyond a reasonable doubt that on or about the 3rd day of October, 2021, and in Cuyahoga County, Ohio, the Defendant Anthony Holmes did, knowing he had no privilege to do so and with purpose to defraud or knowing that he was facilitating a fraud on Da'Shawn Allen, date of birth, 5/31/2004, falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record, to-wit: radio dispatch and/or East Cleveland police report, and the writing, data, computer software, or record was kept by or belonged to a local state or federal governmental entity.

{¶ 91} The trial court further instructed the jury on the meaning of data with respect to a tampering-with-records charge:

> Data means a representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner and that are intended for use in a computer, computer system, or computer network. *Data additionally includes any other representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner.*

(Emphasis added.)

{¶ 92} It is the highlighted portion of the instruction that Holmes now takes issue.

{¶ 93} R.C. 2913.01(R) sets forth the general definition of "data" under the criminal theft and fraud statutes. It provides that "data means a representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner and that are intended for use in a computer, computer system, or computer network." The statute further notes that "[f]or the purposes of section 2913.47 of the Revised Code [insurance fraud], 'data' has the additional meaning set forth in division (A) of that section." R.C. 2913.47(A)(1) provides that "'[d]ata' has the same meaning as in section 2913.01 of the Revised Code and *additionally includes any other representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner.*" (Emphasis added.)

{¶ 94} The trial court's jury instructions included this additional meaning for "data" as set forth in the insurance fraud statute. The question thus becomes whether the broadened definition of "data" for insurance fraud is applicable for a tampering-with-records conviction as well. It is not.

{¶ 95} We presume that "the General Assembly acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *In re G.M.,* 2011-Ohio-4090, ¶ 16 (8th Dist.), citing *State v. Vanderbilt,* 37 Ohio St. 590, 609 (1882). The General Assembly could have included this broadened definition of "data" in the general fraud definition that is applicable to a tampering-with-records convictions. It did not. As such, we will not read language into the definition of "data" for fraud that is not there.

**{¶ 96}** The General Assembly did not intend this broadened definition of "data" found in the insurance fraud statute to apply to an offense of tampering with records. As such, the trial court erred in instructing the jury on this broadened definition of data for a tampering-with-records offense.

### ii. Prejudice

**{¶ 97}** We may not "'"reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error."'" *Echevarria,* 2018-Ohio-1193, at ¶ 29 (8th Dist.), quoting *State v. Shepherd,* 2016-Ohio-931, ¶ 25 (8th Dist.), quoting *State v. McKibbon,* 2002-Ohio-2041, ¶ 27 (1st Dist.). As such, Holmes must also demonstrate that he was prejudiced by the improper instruction. He has not done so.

**{¶ 98}** In reviewing the court's instructions, "we may not judge a single instruction in isolation, but rather in the context of the overall charge." *State v. Copeland,* 2016-Ohio-1537, ¶ 28 (8th Dist.), citing *State v. Madrigal,* 87 Ohio St.3d 378, 396 (2000). "Thus, we must consider the jury instructions 'as a whole' and then determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights." *Id.*

**{¶ 99}** Holmes claims that by expanding the definition of data, the trial court included "sound," i.e. radio broadcasts, into the definition of "data." The State responds, arguing that the additional instruction is "largely duplicative," in that it just removed "the requirement of a computer, computer system, or computer network." And that the outcome of the trial would have been the same because the

"radio dispatch would meet the first portion of the definition of either writing, data, or record."

{¶ 100} We agree with the State. It is unclear how the additional language transforms the definition of "data" to include "sound." Or why "sound" would not have been included in the general definition of data that defined data as being a "representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner and that are intended for use in a computer, computer system, or computer network." Nor do we agree that the removal of the computer, computer system, or computer network language transforms "data" to now include "sound."

{¶ 101} Further, an intent to falsify "data" is not the only thing that could support a tampering-with-records conviction. Rather, the jury was instructed that to be convicted of tampering with records, the jury would have to determine that Holmes did "falsify, destroy, remove, conceal, alter, deface, or mutilate *any writing, computer software, data, or record*." (Emphasis added.) While the jury could have determined that a "radio dispatch" fell under the definition of data, the jury also could have determined that it was a record as set forth in the indictment and in the instructions provided by the court.

{¶ 102} For these reasons, we do not find that but for the trial court's improper jury instruction, the outcome of the trial would have been any different. Therefore, we do not find that the court committed plain error. For the same reason, we do not find that Holmes's right to effective assistance of counsel was violated.

{¶ 103} Accordingly, Holmes's sixth assignment of error is overruled.

## H. Seventh Assigned Error for Review – Telecommunications Fraud Exception Jury Instruction

{¶ 104} In his seventh assignment of error, Holmes claims that his trial counsel was ineffective and the trial court committed plain error for failing to instruct the jury on a recent amendment to R.C. 2913.05 that Holmes alleges would have precluded him from being convicted of telecommunications fraud.

{¶ 105} A recent amendment to R.C. 2913.05, 2021 Ohio Am.S.B. No. 54, effective March 2, 2022, was amended to include, in relevant part:

> (C) Divisions (A) and (B) of this section [telecommunications fraud] do not apply to any of the following:
>
> . . .
>
> (2) Any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a state, a county, or a political subdivision of a state[.]

R.C. 2913.05(C)(2). The offense for which Holmes's was convicted occurred on October 3, 2021, prior to the effective date of the amendment.

{¶ 106} Holmes argues that because he was not indicted and the trial did not begin until after the effective date of the amendment, the exceptions set forth in the amended statute apply to him and that his attorney should have requested, and the trial court should have provided the jury with, a jury instruction to that effect. The State argues that the statute is not retroactive and therefore inapplicable to Holmes.

## 1. Retroactive v. Prospective Application of the Amendment

{¶ 107} As an initial matter, we must discuss whether the exceptions set forth in R.C. 2913.05(C), effective March 2, 2022, apply to the instant case. Whether the trial court erred in failing to apply the amended version of a statute at the time of trial is a legal issue we review de novo. *See State v. Mallory,* 2022-Ohio-3667, ¶ 90 (8th Dist.) (holding that "[w]hether the trial court erred in failing to apply the amended version of [a statute] at the time of sentencing in this matter is a legal issue we review de novo"), citing *State v. Pitts,* 2020-Ohio-5494, ¶ 9 (1st Dist.).

{¶ 108} We begin with the presumption that a statute is "prospective in its operation unless expressly made retrospective." R.C. 1.48. It is well settled that "when the General Assembly reenacts, amends, or repeals a criminal statute, the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced 'penalty, forfeiture, or punishment' in the statute as amended, unless the General Assembly expresses another intent." *State v. Solomon,* 2012-Ohio-5755, ¶ 16 (1st Dist.), citing R.C. 1.58, and *State v. Rush,* 83 Ohio St.3d 53 (1998). "A statute must clearly proclaim its own retroactivity to overcome the presumption of prospective application." *State v. Consilio,* 2007-Ohio-4163, paragraph one of the syllabus. "Statutory text that merely supports an inference of retroactivity is not sufficient: 'Retroactivity is not to be inferred.'" *State v. Miree,* 2024-Ohio-5714, ¶ 7, quoting *Consilio* at paragraphs one and two of the syllabus.

{¶ 109}    At the time the offense in this case took place, October 3, 2021, R.C. 2913.05 had yet to be amended.  The 2022 amendment added the exceptions that Holmes contends apply to him, particularly the language indicating that telecommunications fraud was inapplicable to "[a]ny lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a state, a county, or a political subdivision of a state." R.C. 2913.05(C)(2).

{¶ 110} We begin our analysis by looking at the plain language of the statute to determine whether it provides any indication that the General Assembly expressed an intent to make the 2022 amendment retroactive.  "'"The primary goal of statutory construction is to ascertain and give effect to the legislature's intent," as expressed in the plain meaning of the statutory language.'" *State v. Sumlin,* 2025-Ohio-550, ¶ 19, quoting *State v. Pountney,* 2018-Ohio-22, ¶ 20, quoting *State v. Lowe,* 2007-Ohio-606, ¶ 9.  In doing so, the words and phrases of the statute must "be read in context and construed according to the rules of grammar and common usage."  R.C. 1.42.  Thus, "our duty is 'to give effect to the words used, not to delete words used or to insert words not used.'" *State v. Maxwell,* 2002-Ohio-2121, ¶ 10, quoting *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.,* 20 Ohio St.2d 125, 127 (1969).  "The general rule is that '"[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary."'" *Sumlin* at ¶ 19, quoting *Diller v. Diller,* 2023-Ohio-

1508, ¶ 16, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.,* 74 Ohio St.3d 543, 545 (1996).

{¶ 111} Here, there is nothing in the plain language of the amendment indicating that the General Assembly intended to make the amendment retroactive. Rather, the amendment reads, in relevant part, that "Divisions (A) and (B) of this section [telecommunications fraud] do not apply to . . . any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a state, a county, or a political subdivision of a state[.]" There is no indication that the General Assembly intended the amendment to be applied retroactively. As such, we must presume that the General Assembly intended the amendment to operate prospectively.

{¶ 112} Next, we recognize that even if the General Assembly did not intend a statute to be retroactive, R.C. 1.58(B) provides that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." "Thus, 'if a statute is amended and becomes effective while the defendant's case is pending in the trial court, then its applicability to the defendant's case is guided by R.C. 1.58.'" *Mallory,* 2022-Ohio-3667, at ¶ 92 (8th Dist.), quoting *State v. Stiltner,* 2021-Ohio-959, ¶ 54 (4th Dist.). In short, "[o]nly an amendment that reduces a 'penalty, forfeiture, or punishment for any offense' applies to crimes committed before the effective date of the amendment and tried afterwards." *State v. Miree,* 2024-Ohio-5714, ¶ 11, citing R.C. 1.58.

{¶ 113} The terms "penalty, forfeiture, or punishment" have not been defined by the General Assembly. In *Mallory,* this court defined the relevant terms:

> Generally, the term "penalty" means "the punishment inflicted by a law for its violation. The term is most applied to a pecuniary punishment." *In re Lange's Estate*, 164 Ohio St. 500, 505, 132 N.E.2d 96 (1956). Black's Law Dictionary indicates that the word, "penalty," is "[a]n elastic term with many different shades of meaning," but it typically "involves the idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." *Black's Law Dictionary* 1133 (6th Ed. 1990); *State v. Solomon*, 2012-Ohio-5755, 983 N.E.2d 872, ¶ 38 (1st Dist.). "Forfeiture" is "[a] comprehensive term which means a divestiture of specific property without compensation," and it includes the "[l]oss of some right or property as a penalty for some illegal act." *Black's* at 650; *Solomon* at ¶ 39; *State v. Whitaker*, 111 Ohio App.3d 608, 615, 676 N.E.2d 1189 (6th Dist.1996), quoting Webster's Third New International Dictionary (1986) 891, (defining "'[f]orfeiture' * * * as 'the loss of property or money on account of one's breach of [a] * * * legal obligation'"). Finally, the term "punishment" means "[a]ny fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him * * *." *Black's* at 1234; *Solomon* at ¶ 40.

*Id*. at ¶ 94.

{¶ 114} The 2022 amendment to R.C. 2013.05 does not (1) decrease a penalty imposed for an offense; (2) involve forfeiture of property; or (3) decrease any fine, penalty, or term of confinement. As such, it is not a "penalty, forfeiture, or punishment" as contemplated by R.C. 1.58.

{¶ 115} The General Assembly did not expressly indicate its intention to have the 2022 amendment apply retroactively. Nor does the amendment decrease any "penalty, forfeiture, or punishment." For these reasons, the amendment is not retroactive and the exceptions set forth in the current version of R.C. 2913.05(C) do

not apply to Holmes since the offense for which he was convicted occurred well before the amendment went into effect.

## 2. Plain Error and Ineffective Assistance of Counsel

{¶ 116} Having determined that the 2022 amendment to R.C. 2913.05 making telecommunications fraud inapplicable to "any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a state, a county, or a political subdivision of a state" is not retroactive and not applicable to Holmes, the court did not commit error by failing to instruct the jury on this exception.

{¶ 117} Furthermore, with respect to Holmes's ineffective-assistance claim, we recognize that """the failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial."" *State v. Thompson,* 2024-Ohio-5910, ¶ 7 (8th Dist.), quoting *State v. Nelson*, 2017-Ohio-5568, ¶ 79, quoting *State v. Knox*, 2013-Ohio-1662, ¶ 20 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.). As such, Holmes's attorney was not ineffective for failing to request a jury instruction based on the amended version of R.C. 2913.05.

{¶ 118} Accordingly, Holmes's seventh assignment of error is overruled.

## I. Eighth Assigned Error for Review — Jury Unanimity

{¶ 119} In his eighth assigned error for review, Holmes claims that he was deprived of a unanimous jury verdict since the tampering-with-records charge

included two separate acts, either of which could have been the basis of his conviction for tampering with records. We disagree.

{¶ 120} A criminal defendant is entitled to a unanimous verdict. *Ramos v. Louisiana,* 590 U.S. 83, 93 (2020) ("the Sixth Amendment's unanimity requirement applies to state and federal trials equally"); Crim.R. 31(A). However, "the law on juror unanimity distinguishes between the elements of the crime and the means by which a defendant commits an element." *State v. Gardner,* 2008-Ohio-2787, ¶ 37. In short, "[a]lthough Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Id.* at ¶ 38, citing *Richardson v. United States,* 526 U.S. 813, 817 (1999) (recognizing that a jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime"). "In a typical alternative means case, the jury must be unanimous as to the defendant's guilt of the crime charged, but need not be unanimous as to the means by which the crime was committed." *State v. Crump,* 2019-Ohio-2219, ¶ 32 (8th Dist.), citing *State v. Adams,* 2015-Ohio-3954, ¶ 290. "Therefore, the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.'" *Id.*, citing *Gardner* at ¶ 48.

{¶ 121} In *State v. McKinney,* 2019-Ohio-1118 (8th Dist.), this court discussed the distinction as follows:

> "In an 'alternative means' case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required,

however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." [*Gardner*] at ¶ 49.

However, in a "multiple acts" case, "several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the state elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." [*Gardner*] at ¶ 50.

*Id.* at ¶ 33-34.

{¶ 122} To determine whether a case involves "alternative means" or "multiple acts," we must look at the language of the indictment and determine whether the single count in the indictment can be divided into two or more "distinct conceptual groupings" or into a "single conceptual grouping of related facts." *Id.* at ¶ 36. If the case falls into the latter, it is an "alternative means" case. If it falls into the former, it is a multiple acts case requiring the jury to unanimously agree which of the conceptual groupings unanimously agreed.

{¶ 123} We find that this case is an "alternative means" case. The indictment charged Holmes with tampering with records as follows:

[Holmes] did, knowing he had no privilege to do so, and with purpose to defraud or knowing he was facilitating a fraud on D.A. [Allen] 05/31/2004, falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer, computer software, data, or record, to wit: *radio dispatch and/or East Cleveland Police Report,* and the

writing, data, computer software, or record was kept by or belonged to a local, state, or federal government entity.

(Emphasis added.)

{¶ 124} The two records that Holmes was alleged to have tampered with were the radio broadcast and/or the East Cleveland Police Report. Each are conceptually similar in that both represent the alleged "writing, computer, computer software, data, or record" that Holmes intended to falsify. They are not separate acts. In fact, the offense stemmed from one single act of Holmes instructing Homan to "tell them they struck our vehicle." As a result, this is an "alternative means" case.

{¶ 125} As discussed above, "'[i]n reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.'" *State v. McKinney,* 2019-Ohio-1118, at ¶ 33 (8th Dist.), quoting *State v. Gardner,* 2008-Ohio-2787, at ¶ 49. As discussed in our analysis concerning Holmes's first assignment of error, the evidence was sufficient to support Holmes's convictions for tampering with records. The jury was presented with evidence concerning both the East Cleveland Police reports and the broadcast made by Homan at the behest of Holmes. As such, the evidence was sufficient that a reasonable finder of fact could have determined that either the police report or the radio broadcast was the basis for the tampering-with-records charge. For these reasons, Holmes was not deprived of a unanimous jury verdict and we find no plain error.

{¶ 126} Further, with respect to Holmes's ineffective-assistance claim, as discussed above, "'"the failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial."'" *Thompson,* 2024-Ohio-5910, at ¶ 7 (8th Dist.), quoting *Nelson,* 2017-Ohio-5568, at ¶ 79, quoting *Knox,* 2013-Ohio-1662, at ¶ 20 (8th Dist.), citing *Ford,* 2007-Ohio-5722, at ¶ 9 (8th Dist.). As such, Holmes's attorney was not ineffective for failing to object to the indictment as written.

{¶ 127} Accordingly, Holmes's eighth assignment of error is overruled.

### J. Ninth Assigned Error for Review — Allied Offenses

{¶ 128} In his ninth and final assigned error for review, Holmes claims that the trial court erred in failing to merge his convictions for tampering with records and telecommunications fraud prior to sentencing and that his trial counsel was ineffective for failing to request the court to do so.

### 1. Standard of Review

{¶ 129} We review whether offenses are allied offense of similar import under a de novo standard of review. *State v. Akins,* 2025-Ohio-5632, ¶ 36 (8th Dist.), citing *State v. Sims,* 2024-Ohio-250, ¶ 28 (8th Dist.). However, Holmes did not raise an allied offenses argument with respect to his tampering-with-records and telecommunications-fraud convictions or object to the sentences imposed by the trial court. By failing to seek the merger of these convictions, he "has forfeited his allied offenses claim, except to the extent it constitutes plain error." *State v. Hilliard,* 2015-Ohio-3142, ¶ 16 (8th Dist.), citing *Rogers,* 2015-Ohio-2459, at ¶ 21-

25. As such, Holmes "bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 [the allied offenses statute.]" *State v. Davids,* 2022-Ohio-2272, ¶ 43 (8th Dist.).

**2. Applicable Law**

{¶ 130} R.C. 2941.25 governs whether offenses are subject to merger and provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 131} In determining whether offenses should merge for sentencing under this statute, courts review three separate factors: the import, the conduct, and the animus. *Akins* at ¶ 38, citing *State v. Bey,* 2025-Ohio-740, ¶ 86 (8th Dist.), citing *State v. Ruff,* 2015-Ohio-995, paragraphs one and three of the syllabus. In short, "[o]ffenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Bey* at ¶ 86, citing *Ruff* at paragraph three of the syllabus, ¶ 25, 31.

**{¶ 132}** Offenses are committed separately under this statute if "'one offense was complete before the other offense occurred . . . notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard,* 2022-Ohio-3081, ¶ 38 (2d Dist.), quoting *State v. Turner,* 2011-Ohio-6714, ¶ 24 (2d Dist.). "Thus, '"when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts."'" *Akins,* 2025-Ohio-5632, at ¶ 39 (8th Dist.), quoting *Woodard* at ¶ 38, quoting *State v. Mooty,* 2014-Ohio-733, ¶ 49 (2d Dist.). With respect to animus, it has been defined as "'purpose or more properly, immediate motive.'" *State v. Priest,* 2018-Ohio-5355, ¶ 12 (8th Dist.), quoting *State v. Bailey,* 2014-Ohio-4684, ¶ 34 (8th Dist.). "'"If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses."'" *Akins* at ¶ 39, quoting *State v. Lane,* 2014-Ohio-562, ¶ 12 (12th Dist.), quoting *State v. Lewis,* 2012-Ohio-885, ¶ 13 (12th Dist.).

### 3. Analysis

**{¶ 133}** The record demonstrates that Holmes's convictions for tampering with records and telecommunications fraud arise from the single act of Holmes instructing Homan to "tell them [dispatch] they struck our vehicle." As discussed above, the jury could have determined he did so with the fraudulent intent to cover up his violation of East Cleveland Police policies, i.e., that he attempted an unauthorized "PIT" maneuver without supervisor approval. Thus, it cannot be said

that the offenses for tampering with records or telecommunications fraud were committed separately or with separate animus with respect to each offense.

{¶ 134} The question thus becomes whether the offenses fall under the first prong of the *Ruff* test, i.e. whether the offenses are dissimilar in import or significance. "Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) 'when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.'" *Akins* at ¶ 39 (8th Dist.), quoting *Ruff*, 2015-Ohio-995, at ¶ 23.

{¶ 135} Here, the State argues that the import of falsifying a police report as the basis for Holmes's tampering-with-records convictions differs in import from the false radio broadcast as the basis for Holmes's telecommunications convictions, "even if both acts were part of a course of conduct and committed with the same animus of motivation." In short, the State argues that the harm resulting from each offense is separate and identifiable. Holmes even concedes that the "separate nature of the written Police Report and the radio broadcast is evident" and that if the tampering-with-records offense were based off the police report, rather than the radio broadcast, the two offenses would not merge.

{¶ 136} However, Holmes contends that since the jury was instructed that either the police report or the radio broadcast could be the basis for tampering-with-records charge, the State cannot assume that the tampering with records charge was based upon the police report. But this argument improperly places the burden of proof on the State. Under a plain-error analysis, it is "the accused [that] bears the

burden of proof to demonstrate plain error on the record[.]" *Rogers,* 2015-Ohio-2459, at ¶ 22, citing *Quarterman,* 2014-Ohio-4034, at ¶ 16. The accused "must show 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings[.]'" *Id.,* quoting *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). And even if the error is obvious, "'the trial court's error must have affected the outcome of the trial.'" *Id.,* quoting *Barnes* at 27. "The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." *Id.,* citing *United States v. Dominguez,* 542 U.S. at 81-83.

{¶ 137} Holmes has not met his burden here. He concedes that if the tampering-with-records offense were based off the police report, rather than the radio broadcast, the two offenses would not merge. From this record, we cannot tell whether the jury based their conviction for tampering with records on the police report or the radio broadcast. As such, Holmes has failed to demonstrate that the court's failure to merge his convictions for tampering with records and telecommunications fraud was plain error. Accordingly, the trial court did not commit plain error by failing to merge these convictions. *See, e.g., State v. Ross,* 2018-Ohio-2728, ¶ 20 (8th Dist.) (Where the record contained insufficient facts to determine whether the defendant's aggravated-robbery and theft convictions were allied offenses of similar import, the trial court did not commit plain error in failing to merge defendant's convictions.); *State v. Hilliard,* 2015-Ohio-3142, ¶ 28 (8th Dist.) (Where the record contained insufficient facts to determine whether the

defendant's kidnapping and aggravated-murder convictions were allied offenses of similar import, the trial court did not commit plain error in failing to merge defendant's convictions.); *State v. Burrows,* 2020-Ohio-3646, ¶ 11 (Defendant cannot demonstrate plain error "merely by arguing that the offenses would merge if additional facts are assumed.").

{¶ 138} Similarly, we cannot say that had Holmes's trial counsel objected to the court's failure to merge these offenses the outcome would have been any different. Therefore, we cannot say that his trial counsel was ineffective.

{¶ 139} Accordingly, Holmes's ninth and final assignment of error is overruled.

### III. Conclusion

{¶ 140} Following a thorough review of the record and applicable law, we overrule Holmes's nine assignments of error. His convictions and sentences for interfering with civil rights, dereliction of duty, tampering with records, and telecommunications fraud are affirmed.

{¶ 141} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR